Catterson, J.
(dissenting). I must respectfully dissent because, in my opinion, the determination of DHCR’s Deputy Commissioner was made “without regard to the facts.” More importantly, the finding that the “alteration” of the subject apartment is inconsistent with the rent laws ignores well-established precedent. Rather than considering the impact on the tenant of reconfiguration, or “alteration to the shape and character” of an apartment, precedent requires the application of an “adequate substitute” test, which, in my opinion, is satisfied here. The majority’s holding to the contrary is based primarily on the findings that (a) the foyer space should not be included in the new kitchen size because the alteration would reduce the actual physical space available for food preparation-, and (b) the alteration would leave the new kitchen without a pantry and small closet even though a replacement closet would be constructed in the living space. The majority appears to be under the misapprehension that “adequate substitution” means replication.
This CPLR article 78 proceeding arises from the application *111 by Lite View, LLC, the owner of an apartment building on East 84th Street, Manhattan, for modification of services in a ground-floor, rent-stabilized unit. Within weeks of purchasing the building, the owner filed the application with the New York State Division of Housing and Community Renewal (hereinafter referred to as the DHCR), as required by the Rent Stabilization Laws and Rent Stabilization Code.
In the application, the owner stated that, in order to install an elevator in the five-story, 20-apartment building, he needed to use 63 square feet of the apartment on the ground floor. He stated that the tenant in the apartment would be compensated by an extension of the dwelling space into the backyard by an additional 66 square feet. At the time, the tenant had access to, but not exclusive use of the backyard. The owner proposed a 10% monthly rent reduction for the duration of the lease.
The owner further advised DHCR that it would completely renovate the tenant’s apartment by installing new walls and ceiling, new flooring, new kitchen appliances and fixtures, a new bathroom and fixtures, and new windows. During the renovation, the tenant would be temporarily relocated to another building in the vicinity of the subject building. Both the renovation and the relocation would be at the owner’s sole expense.
In September 2009, the Rent Administrator issued an order, granting the owner permission to install the elevator, provided that the owner relocated the tenant while construction was ongoing, and provided that the tenant’s rent was reduced as offered. The tenant filed a petition for administrative review (hereinafter referred to as PAR) asserting for the first time that relocation would be an undue burden on his health, and that under the proposed plans he would be losing living space.
The DHCR Deputy Commissioner granted the PAR and revoked the Rent Administrator’s order relying on two provisions of the Rent Stabilization Code. She found, inter alia, that the elevator was not required by law; that the renovation would result in the loss of 62 square feet, that is, 18% of the tenant’s dwelling space; and that the “significant reconfiguration . . . would materially reduce the use and enjoyment of the apartment by the tenant in contravention of the rent laws.” The Deputy Commissioner further cited to this Court’s decision in Matter of Greenberg v Higgins (167 AD2d 216 [1990]) which she observed addressed “[a] similar situation” where an application was denied because the proposed modification plans “completely altered the shape and character of the apartment.”
*112 Subsequently, the owner commenced this article 78 proceeding, challenging the determination. Supreme Court found that the Deputy Commissioner had made “several misstatements of fact” based on a misreading of the floor plans for the apartment (30 Misc 3d 1224[A], 2011 NY Slip Op 50192[U], * 7 [2011]). These “misstatements of fact” included the finding that there would be a reduction in the size of the apartment, notably because the new kitchen would be smaller than the existing one. Nevertheless, Supreme Court upheld the determination, finding that the determination of a “significant reconfiguration of the [a]partment” had “at least some rational basis” because it was “based on [an] evaluation of the specific facts . . . and [the Deputy Commissioner’s] expertise in evaluating such facts, is supported by the record” (id. [emphasis added]).
For the reasons set forth below, I would reverse Supreme Court, annul the Deputy Commissioner’s ruling, and grant petitioner’s application for modification of the subject premises. It is well established that the determination of an administrative agency “will not be disturbed if it has warrant in the record, a reasonable basis in law, and is neither arbitrary or capricious.” (Greystone Mgt. Corp. v Conciliation & Appeals Bd. of City of N.Y., 94 AD2d 614, 617 [1st Dept 1983], affd 62 NY2d 763 [1984]; see also Matter of West Vil. Assoc. v Division of Hous. & Community Renewal, 277 AD2d 111, 112 [1st Dept 2000] [“determination may be found arbitrary where it is without sound basis in reason and is generally taken without regard to the facts”] [internal quotation marks omitted].)
On appeal, the owner asserts that because the Deputy Commissioner’s determination was made without regard to the facts, it should be annulled. I agree to the extent that Supreme Court’s deference to the Deputy Commissioner’s “expertise in evaluating the facts” appears illogical given the court’s observation that the Deputy Commissioner was clearly mistaken about three determinative facts she purported to evaluate. Based on the floor plans in the record, Supreme Court correctly noted that the apartment size would not be reduced by 18%, but that, in fact, the interior square footage would be “virtually unchanged.” It also correctly found that “the kitchen area in the proposed design is arguably larger than the kitchen area in the current design” (2011 NY Slip Op 50192[U], * 7 [emphasis added]). Lastly, the court properly concluded that, because the Deputy Commissioner had failed to determine that the tenant had exclusive use of the rear yard, there was no reduction of a required service.
*113 However, this does not end the analysis because it is also well established that judicial review of an administrative determination is limited to the grounds invoked by the agency. (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753 [1991].) Here, the Deputy Commissioner did not deny the owner’s application based strictly on a decrease in dwelling space. Rather, the Deputy Commissioner ruled that the owner’s proposed changes “would result in a significant reconfiguration of the apartment and the impact of such a significant change would materially reduce the use and enjoyment of the apartment by the tenant in contravention of the [r]ent [l]aws.”
The rent laws on which the Deputy Commissioner relied are provisions of the Rent Stabilization Code (9 NYCRR) § 2520.6 (r) (1) and § 2522.4 (e). In relevant part, the first provision defines “required services” as the requirement of maintaining “[t]hat space and those services which the owner was maintaining or was required to maintain” on certain applicable dates. The second provision permits an owner to file an application to
“modify or substitute required services, at no change in the legal regulated rent ... on the grounds that: (1) the owner and tenant, by mutual voluntary written agreement, consent to a modification or substitution of the required services ... or (2) such modification or substitution is required for the operation of the building in accordance with the specific requirements of law; or (3) such modification or substitution is not inconsistent with the [Rent Stabilization Law] or this Code.” (9 NYCRR 2522.4 [e].)
The Deputy Commissioner purported to find legal authority for her determination that the “alteration to the [subject] apartment was not consistent with the rent laws” in this Court’s decision, Matter of Greenberg v Higgins (167 AD2d 216 [1990], supra). On appeal, the respondent DHCR also relies on Greenberg to argue that the Deputy Commissioner’s determination has a rational basis because in Greenberg an owner’s application to install an elevator shaft was denied when his proposed plan to extend a tenant’s apartment “completely alter[ed] the shape and character of the apartment.” (167 AD2d at 217.) Hence, the respondent now asserts that a “[m]aterial alteration to the shape or character of a rent[-]stabilized apartment without the tenant’s consent is prohibited by law.”
Not only do the respondent — and the Deputy Commissioner— totally misconstrue Greenberg as set forth more fully below, but *114 as a threshold matter the respondent is simply incorrect about the requirement of a tenant’s consent. Given the statutory procedure outlined above, where tenant consent is just one of three grounds, it is evident that a tenant’s consent is not required in order for an owner to obtain DHCR approval for a modification. More importantly, there is no statutory authority for a finding that “significant reconfiguration” or rearrangement of a dwelling space or even a “material alteration to the shape or character of a rent[-]stabilized apartment” (emphasis added) is inconsistent with the rent laws. There is no language in the rent laws that, in and of itself, proscribes reconfiguration, rearrangement or alteration of rent-stabilized apartments.
The primary purpose of the rent laws as applied to rent-stabilized apartments is to “prevent the exaction of unjust, unreasonable and oppressive rents and rental agreements.” (See 9 NYCRR 2520.3.) Legal regulated rents may be increased or decreased only as specified in the Rent Stabilization Code. (9 NYCRR 2522.1.) Indeed, the modification provision relied on by the Deputy Commissioner falls within the section titled “[adjustment of legal regulated rent.” (See 9 NYCRR 2522.4.)
The provisions of this section allow an owner to make an application to increase rent (for example in a situation where an owner or landlord has increased services or made major capital improvements) (see 9 NYCRR 2522.4 [a] [1]); or to reduce required services or dwelling space for a corresponding rent reduction (see 9 NYCRR 2522.4 [d]); or to modify or substitute required services or dwelling space at no change of rent (see 9 NYCRR 2522.4 [e]). In other words, any reduction in dwelling space or required services without a corresponding reduction in rent will contravene the rent laws. (See e.g. Matter of Car Barn Flats Residents’ Assn. v New York State Div. of Hous. & Community Renewal, 184 Misc 2d 826, 832 [Sup Ct, NY County 2000] [DHCR is empowered to determine what constitutes required services and whether the curtailment of such services translates into an “evasion of stabilized rents”].) To the extent there is a modification of dwelling space or required services, the rent laws require adequate substitution provided by the owner. (Greenberg, 167 AD2d at 217, citing Matter of Vento v Prince, 73 AD2d 884 [1st Dept 1980].)
In Vento, this Court affirmed the determination of the Conciliation and Appeals Board (hereinafter referred to as CAB), the forerunner of DHCR, that rent-stabilized tenants were not denied any required services when the owner of the building *115 converted from manual to automatic operation of elevators. This Court found that CAB “correctly used an ‘adequate substitute’ test” to determine that the owner had provided adequate substitute protective and security services. (73 AD2d at 885.)
Hence, both the Deputy Commissioner and the respondent misconstrue the plain import of Greenberg and the well established precedent of this Department by zeroing in on the one phrase describing the proposed, and rejected, “sliver” extension of the apartment in Greenberg as per se prohibited because it “completely alter[s] the shape and character of the apartment.” (167 AD2d at 217.) Certainly, Greenberg does not support the respondent’s argument that the proposed extension in this case is also per se prohibited because “as this Court has already ruled . . . such an extension ... is not an adequate substitute” (emphasis added).
In my opinion, this is a flagrant mischaracterization of Greenberg. There are no facts in Greenberg that would allow the respondent to assume that the proposed extension of the tenant’s apartment in that case is similar in square footage, shape or any other way to the extension proposed in this case. Thus, there is no basis whatsoever for the Deputy Commissioner viewing it as a “similar situation” or the respondent viewing it as “on all fours” with the instant case in order to deny the owner’s modification application in this case unless one were to accept that Greenberg establishes a per se prohibition.
Rather, “adequate substitution” must be determined on a case by case basis. Here, as Supreme Court correctly noted, the proposed 66-square-foot extension of the apartment into the backyard results in the same square footage. The plans in the record establish that the layout of the studio apartment is also virtually unchanged from the existing layout, and thus not a “drastic” or “significant” reconfiguration. Moreover, even if the reduction in the size of the backyard were seen as a reduction of a required service, the owner has offered the tenant a 10% monthly reduction in rent for the duration of the lease. Additionally, the owner has offered to renovate the entire apartment installing a new bathroom with new fixtures, a new kitchen with new appliances, new flooring, and new windows, all at the owner’s sole cost. In my opinion, it would be the very essence of arbitrariness to find that such a proposal for modification is not an adequate substitute for taking 63 square feet from the entrance to the apartment and moving the total interior space 63 square feet to the rear of the existing studio.
*116 Renwick, Freedman and Manzanet-Daniels, JJ., concur with Tom, J.E; Catterson, J., dissents in a separate opinion.
Order and judgment (one paper), Supreme Court, New York County (Joan B. Lobis, J.), entered January 14, 2011, affirmed, without cost.